## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RENE ANTHONY OLIVER**                          **CIVIL ACTION**


**VERSUS**                                       **CASE NO. 20-1757**


**MAXIMUS FEDERAL SERVICES, INC.**               **SECTION: "G" (4)**


## ORDER AND REASONS

In this litigation, Plaintiff Rene Anthony Oliver ("Plaintiff") alleges that Defendant Maximus Federal Services, Inc. ("Defendant" or "Maximus") discriminated against Plaintiff on the basis of race and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[1] Pending before the Court is "Defendant's Motion for Summary Judgment."[2] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiff filed a Complaint in this Court on June 17, 2020.[3] Plaintiff, an African American man, alleges that he began working for Defendant as a Customer Service Representative on October 27, 2014 "while it was GDIT."[4] GDIT later promoted Plaintiff to the position of

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 23.

[3] Rec. Doc. 1.

[4] *Id.* at 3.

1

supervisor.[5]  Plaintiff further alleges that Maximus purchased GDIT on November 16, 2018, and Plaintiff was a supervisor for Maximus until he was discharged on February 24, 2020.[6]

According to Plaintiff, on January 24, 2020, he was "off the clock and leaving work" when he was approached by his supervisor Lyle Schmitz ("Schmitz") and an employee from Human Resources, who asked Plaintiff to come inside and speak with them.[7]  Plaintiff alleges that he was "handed a verbal warning and asked to sign a letter of resignation," but he declined to do so.[8] Plaintiff maintains that the "reprimand failed to state any policy violation(s) or exception(s) to the established policy prohibiting the action after officially signing off or clocking out of work."[9]

Plaintiff avers that on the same day after receiving the "verbal warning," he went to Human Resources to get the number to the "Ethics Line to file a complaint against his supervisor," and was "accused [by Human Resources] of beating on the desk and threatening a coworker."[10] Plaintiff asserts that he reported Schmitz to the Ethics Line on January 24, 2020.[11]  Plaintiff claims that he was fired by Schmitz within a month and thereafter filed a second complaint to the Ethics Line for retaliatory conduct.[12]  Plaintiff asserts that on February 24, 2020, he was "discharged from

---

[5] *Id.*

[6] *Id.* at 3, 5.

[7] *Id.* at 4.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 5.

[11] *Id.*

[12] *Id.*

[Defendant] for falsely being accused of a pattern of behavior as a big angry Black man."[13]

Plaintiff asserts claims of racial discrimination and retaliation in violation of Title VII.[14] Plaintiff represents that all administrative procedures required prior to the institution of this lawsuit have been fulfilled.[15]

On April 20, 2021, Defendant filed the instant motion for summary judgment.[16] With leave of Court, Plaintiff filed an untimely opposition on May 10, 2021.[17] On May 12, 2021, with leave of Court, Defendant filed a reply in further support of the instant motion.[18]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of Summary Judgment*

Defendant moves the Court to grant summary judgment in Defendant's favor pursuant to Federal Rule of Civil Procedure 56 because "there is no evidence that [Defendant] discriminated against Plaintiff . . . because of race or retaliated against him for engaging in protective activity."[19] According to Defendant, Plaintiff's employment was terminated "after he behaved in an unprofessional and confrontational manner when Maximus delivered a verbal warning to [Plaintiff] after [Plaintiff] accepted an employee's resignation letter from the employee's

---

[13] *Id.* at 7.

[14] *Id.* at 1.

[15] *Id.* at 3.

[16] Rec. Doc. 23.

[17] Rec. Doc. 30.

[18] Rec. Doc. 31.

[19] Rec. Doc. 23.

mother."[20]  Defendant contends that Plaintiff instructed the employee's mother to sign and submit a forged resignation letter on the employee's behalf.[21]  Defendant asserts that Schmitz and Senior Human Capital Specialist Naima Bastain ("Bastain") delivered a verbal warning to Plaintiff on January 24, 2020.[22]  Defendant asserts that Plaintiff was "argumentative, used an elevated and unprofessional tone, and refused to sign the warning."[23]  According to Defendant, Plaintiff "attempted to come around [Bastain's] desk to point at something on her computer and invaded her personal space."[24]  Defendant submits that it terminated Plaintiff's employment on February 24, 2020 due to Plaintiff's "unacceptable conduct toward Bastain during the delivery of his verbal warning on January 24, 2020."[25]

### 1.      Race Discrimination Claim

Defendant first argues that Plaintiff's race discrimination claim must be dismissed because Plaintiff cannot establish a prima facie case of race discrimination.[26]  Specifically, Defendant contends (1) Plaintiff was not replaced by someone outside of his protected class; and (2) Plaintiff cannot meet his summary judgment burden of showing that purported comparators Bobbi Sanders ("Sanders") and Tammey Penton ("Penton") received more favorable treatment under nearly

---

[20] Rec. Doc. 23-1 at 2.

[21] *Id.* at 3.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 4.

[25] *Id.* at 5.

[26] *Id.* at 5–6.

identical circumstances.[27]

Second, Defendant argues that Plaintiff cannot establish that Defendant's "legitimate and nondiscriminatory reason for his termination was pretext for discrimination."[28] Defendant asserts that Plaintiff "cannot produce any competent summary judgment evidence which gives rise to a discriminatory motive, or indicates that [Defendant's] reason for terminating his employment was not a true reason for his termination."[29] Defendant also avers that individuals involved in the decision to terminate Plaintiff's employment were also African-American, which "weakens any possible inference of discrimination on the basis of race."[30]

Third, Defendant asserts that Plaintiff cannot identify a similarly-situated comparator who was treated more favorably.[31]

### 2.    Retaliation Claim

With respect to Plaintiff's claim of retaliation, Defendant argues that Plaintiff cannot establish a prima facie case of retaliation because he cannot establish a causal relationship between his protected activity and his termination.[32] According to Defendant, Plaintiff's disciplinary record reveals that he was previously counseled for unprofessional behavior.[33] In addition, Defendant represents that Defendant adhered to its policies of treating employees with "decency

---

[27] *Id.* at 7–10.

[28] *Id.* at 10.

[29] *Id.* at 12.

[30] *Id.* at 13.

[31] *Id.* at 14–15.

[32] *Id.* at 15.

[33] *Id.* at 16.

and respect" and "prohibit[ing] threatening, violent, and intimidating behavior" when terminating Plaintiff's employment.[34]  Finally, Defendant contends that Plaintiff cannot establish that he would not have been terminated but for engaging in protected activity.[35]

## B.  *Plaintiff's Arguments in Opposition to Summary Judgment*

In opposition to the instant motion for summary judgment, Plaintiff argues that summary judgment is not appropriate on his race discrimination and retaliation claims.[36]

### 1.   Race Discrimination Claim

Plaintiff argues that he is able to demonstrate a prima facie case of race discrimination for three reasons.[37]  First, Plaintiff contends that Penton, a Caucasian female, is a proper comparator who was treated more favorable than Plaintiff because both Plaintiff and Penton were considered CSR supervisors, reported to the same manager, and were both accused of being "unprofessional and aggressive."[38]  According to Plaintiff, general manager Lyle Schmitz ("Schmitz") recommended termination for both Plaintiff and Penton, Plaintiff and Penton both called the Ethics Line to report Schmitz, and yet "Schmitz agreed to bring back Penton and unfairly refused to bring back . . . Plaintiff."[39]  Plaintiff also notes that Lisa Davis ("Davis") was another Caucasian female supervisor "who readily spoke her mind and often disagreed with management [and] received

---

[34] *Id.* at 17.

[35] *Id.* at 18–19.

[36] *See generally* Rec. Doc. 30.

[37] *Id.* at 4.

[38] *Id.* at 5.

[39] *Id.*

write-ups but was not terminated."[40]

Second, Plaintiff argues that Defendant cannot establish a legitimate and nondiscriminatory reason for Plaintiff's termination.[41] Plaintiff maintains that Defendant's assertion that Plaintiff was unprofessional, confrontational, and aggressive "is a pretext to conceal discrimination."[42] Plaintiff also notes that he "merely followed the instructions of his immediate supervisor" prior to receiving a verbal warning from Schmitz.[43]

Third, Plaintiff argues that "the issue of race was not undermined because a woman of color allegedly participated in the decision" to terminate Plaintiff.[44]

### 2.    Retaliation Claim

With respect to the retaliation claim, Plaintiff argues that he can demonstrate a prima facie case of retaliation.[45] Plaintiff asserts that he engaged in protected activity when he reached out to the Ethics Line to complain of unfair treatment and was subsequently terminated a month later, unlike Penton, a Caucasian female.[46]

Plaintiff also argues that "overall Plaintiff was a good worker."[47] Plaintiff claims that Defendant terminated Plaintiff "in violation of its own rules and policies" because Plaintiff "went

---

[40] *Id.* at 5–6.

[41] *Id.* at 6.

[42] *Id.*

[43] *Id.* at 7.

[44] *Id.* at 7–8.

[45] *Id.* at 8.

[46] *Id.* at 9.

[47] *Id.* at 11.

from a verbal [warning] to termination."[48]  Plaintiff notes that the verbal warnings were issued in 2018 and "should not have been considered in [Plaintiff's] termination in 2020."[49]

Next, Plaintiff argues that there is a causal connection between Plaintiff's complaint to the Ethics Line and his termination.[50]  Plaintiff points to Schmitz's testimony in which Plaintiff contends Schmitz "admitted that he was aware that Plaintiff had contacted the Ethic's [sic] Hotline" prior to Plaintiff's termination.[51]  Plaintiff also argues that Davis, a Caucasian female, "regularly disagreed with Schmitz but was never terminated" and the "obvious differences in treatment . . . reveal a racial animus and presents [sic] a strong causal connection between Plaintiff disagreeing with the verbal [warning] and being fired."[52]

Finally, Plaintiff argues that professional counseling Plaintiff underwent prior to the sale of GDIT, Defendant's predecessor, to Defendant in November 2018 should not be considered in the context of the instant motion for summary judgment.[53]

## C.    *Defendant's Arguments in Further Support of Summary Judgment*

In reply, Defendant reasserts that Plaintiff's evidence is insufficient to raise a genuine issue of material fact regarding his race discrimination claim because Plaintiff cannot establish a prima facie case of race discrimination and presents no evidence that Penton and Davis "had the same disciplinary record, received similar performance reviews and ratings, or were involved in a similar

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 12–13.

[51] *Id.* at 12.

[52] *Id.* at 13.

[53] *Id.* at 13–14.

incident that resulted in disciplinary action."[54]  Defendant also contends that Plaintiff cannot show that Defendant's articulated reason for terminating Plaintiff was pretext for race discrimination because Plaintiff relies "solely on his self-serving testimony and speculative assumptions that [Defendant] terminated his employment because of his race."[55]

### III. Legal Standards

#### A.   *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56]  When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[57]  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[58] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[59]  The nonmoving party may not rest upon the pleadings, but must identify specific facts in

---

[54] *Id.* at 3.

[55] *Id.* at 4–6.

[56] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[57] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[58] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[59] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[60]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[61] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[62] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[63] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[64] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[65] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[66] Hearsay

---

[60] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[61] *Celotex*, 477 U.S. at 323.

[62] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[63] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[64] *Little*, 37 F.3d at 1075.

[65] *Anderson*, 477 U.S. at 248.

[66] *Little*, 37 F.3d at 1075.

evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[67] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[68]

## B.   *Employment Discrimination*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating based on sex, race, color, religion, and national origin in employment decisions, including firing.[69] The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under Title VII, as well as allegations of retaliation.[70] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.[71] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[72] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment action.[73] The defendant must point to admissible evidence in the record,[74] but the burden is one

---

[67] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[68] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[69] 42 U.S.C. § 2000(e) *et seq.*, as amended.

[70] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014)).

[71] *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[72] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

[73] *Id.*

[74] *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

of production, not persuasion.[75] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[76] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[77]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[78] Plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[79]

## IV. Analysis

### A.    Whether Defendant Is Entitled to Summary Judgment on Plaintiff's Race Discrimination Claim

Plaintiff, an African-American male, asserts a claim of race discrimination in violation of Title VII.[80] Courts analyze such discrimination claims under the *McDonnell Douglas* framework.[81] To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that he:

---

[75] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[76] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[77] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[78] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[79] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[80] Rec. Doc. 1 at 1.

[81] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802).

(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was the subject of an adverse employment action; and (4) was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.[82]

The first three elements of a prima facie case of race-based discrimination are not disputed here.[83] With respect to the fourth element, Defendant argues that Plaintiff was not replaced by a member outside of his protected class because following Plaintiff's termination, Plaintiff's duties were reassigned to other supervisors working at the site.[84] Defendant also argues that Plaintiff cannot provide evidence in support of a comparator who was treated more favorably than Plaintiff under nearly identical circumstances.[85] Plaintiff counters that Penton and Davis, both Caucasian females, were similarly situated to Plaintiff and treated more favorably than Plaintiff under nearly identical circumstances.[86]

The issue here is whether the comparators identified by Plaintiff are similarly situated to him and were treated more favorably than Plaintiff under nearly identical circumstances. The Fifth Circuit has explained that "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."[87] In addition, because of the requirement that an employee demonstrate that the employment actions at issue

---

[82] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

[83] *See* Rec. Doc. 23-1.

[84] *Id.* at 6–7.

[85] *Id.* at 7.

[86] Rec. Doc. 30 at 5–6.

[87] *Lee*, 574 F.3d at 259.

were taken under "nearly identical circumstances," the Fifth Circuit has held that "employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated."[88]  Nevertheless, the Fifth Circuit does not interpret "nearly identical as synonymous with identical."[89]

Applying Fifth Circuit precedent to the instant case, the Court finds that genuine issues of material fact are in dispute regarding Plaintiff's prima facie case of race discrimination. Plaintiff offers two comparators, Penton and Davis, both Caucasian females, who Plaintiff argues were treated more favorably than Plaintiff under nearly identical circumstances.[90]

With respect to Penton, Plaintiff points to evidence that Penton was also a CSR supervisor employed by Defendant who received a "written warning for her conduct on the floor" and was "separated" by Schmitz but later brought back upon the recommendation of Human Resources after Penton contacted the Ethics Line.[91]  The facts in the record demonstrate that Plaintiff received a verbal warning for purportedly accepting another employee's resignation letter from the employee's mother rather than the employee himself,[92] Plaintiff subsequently contacted the Ethics Line to complain about Schmitz,[93] and Plaintiff was thereafter terminated by Schmitz for his

---

[88] *Id.* at 259–60.

[89] *Id.* at 260 (internal quotations omitted).

[90] Rec. Doc. 30 at 5–6. In the instant motion, Defendant argues that Sanders is not a proper comparator. Rec. Doc. 23-1 at 7. However, it does not appear that Plaintiff avers either in the Complaint or in opposition to the instant motion that Sanders is a comparator.

[91] Rec. Doc. 30-4 at 7–8.

[92] Rec. Doc. 23-3 at 16.

[93] Rec. Doc. 23-6 at 104.

allegedly "unacceptable conduct towards Bastain during the delivery of his verbal warning."[94] The facts in the record also show that Penton was terminated for speaking inappropriately to a customer and subsequently contacted the Ethics Line.[95] Schmitz testified that Penton was reinstated about two weeks after her termination upon a recommendation from human resources and received a written warning for her conduct.[96] Based on these facts, a reasonable trier of fact could conclude that Penton and Plaintiff both purportedly engaged in unprofessional conduct but Plaintiff was terminated while Penton was reinstated to her position.

Additionally, although Penton and Plaintiff were supervised by different immediate managers at the time of the respective incidents,[97] it appears that both Penton and Plaintiff were ultimately subject to the employment decision-making authority of Schmitz, a Caucasian man.[98] The Fifth Circuit has held that for purposes of establishing a plaintiff's prima facie case of discrimination, "it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor."[99] Furthermore, although Defendant argues that Plaintiff's disciplinary record shows that he was

---

[94] Rec. Doc. 23-3 at 3 (declaration of Wendy Elliot, Senior Human Resources Manager for Defendant).

[95] Rec. Doc. 23-7 at 7–12.Specifically, Schmitz testified that Penton raised her voice to a customer, the customer called Penton a "bitch," and Penton responded that "it takes one to know one" then hung up on the customer. *Id.* at 11.

[96] *Id.* at 8–9.

[97] Rec. Doc. 23-3 at 2–3 ("At the time of Tammey Penton's inappropriate exchange with a customer in 2018, she was supervised by Manager Amenda Mark."); Rec. Doc. 23-6 at 107 ("The internal investigation also confirmed that after talking to Shawn, [Plaintiff] had asked for guidance from his manager, Jennifer Gordon, later that day, and that she directed him to contact the incarcerated employee's mother to get the resignation letter.").

[98] *See* Rec. Doc. 23-7 at 6–7 (Schmitz deposition).

[99] *Lee*, 574 F.3d at 260–61.

15

previously counseled for unprofessional behavior,[100] Plaintiff challenges the validity of the records offered by Defendant in support of this assertion.[101] At the summary judgment stage, where the Court does not weigh evidence, the Court will not assess the credibility of Defendant's assertions regarding Plaintiff's disciplinary record. For these reasons, the Court finds that genuine issues of material fact are in dispute as to whether Plaintiff was treated less favorably than Penton under nearly identical circumstances.

Similarly, Plaintiff asserts that Davis "was another White female supervisor who readily spoke her mind and often disagreed with management who received write-ups but was not terminated."[102] Plaintiff points to evidence that Davis also engaged in unprofessional conduct[103] and "was given a written warning for not . . . following policy" after she engaged in what "could have been a separation offense" involving Maximus's policy on union activities.[104] Although Defendant asserts that Davis was a manager whereas Plaintiff was a supervisor,[105] Plaintiff

---

[100] Rec. Doc. 23-3 at 1; Rec. Doc. 23-7 at 5.

[101] Rec. Doc. 30 at 11–12.

[102] *Id.* at 5.

[103] Rec. Doc. 30-5 at 17 (deposition of Maximus manager Jennifer Gordon)

> Q.      Right. Have you had the occasion to witness [Davis] slamming doors because she was disappointed with management decisions?
>
> A.      I can't say that I've witnessed her slamming a door.
>
> Q.      Have you heard it?
>
> A.      She probably – I probably have heard it. Yes.

*See also* Rec. Doc. 30-4 at 4–6 (deposition of Schmitz).

[104] *Id.* at 5.

[105] *See, e.g.*, Rec. Doc. 23-3 at 6; Rec. Doc. 23-6 at 12.

maintains that Davis was a supervisor when she "regularly disagreed with Schmitz."[106] For these reasons, the Court finds that genuine issues of material fact are in dispute as to whether Plaintiff was treated less favorably than Davis under nearly identical circumstances.

Finding that Plaintiff has established a genuine factual dispute regarding his prima facie case of race discrimination, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the termination.[107] The Fifth Circuit has held that where there is "ample evidence in the record to support the view that [an employee] was fired for [an] inappropriate and unwarranted threat of [a] fellow employee," a finding that the employer has proffered a legitimate, non-discriminatory reason for termination is appropriate.[108] Here, Defendant has pointed to admissible evidence showing that Defendant was terminated after an exchange with Schmitz and Bastain where Plaintiff was "unprofessional, confrontational, and aggressive toward Bastain, and entered her personal space."[109] Therefore, Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination, and the burden shifts to Plaintiff to establish that the reason for termination offered by Defendant is merely a pretext for discrimination.[110]

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiff on

---

[106] Rec. Doc. 30 at 15.

[107] *See, e.g.*, *Grimes v. Tex. Dep't Of Mental Health,* 102 F.3d 137, 143 (5th Cir. 1996).

[108] *Hornsby v. Enter. Prod. Co.*, 145 F. App'x 32, 33 (5th Cir. 2005).

[109] Rec. Doc. 23-3 at 3 (declaration of Wendy Elliot, Senior Human Resources Manager for Defendant).

[110] *Laxton*, 333 F.3d at 578.

the basis of race.[111]  The burden accordingly shifts back to Plaintiff to "present sufficient evidence to find that the employer's asserted justification is false."[112]  Neither a tenuous inference, nor the plaintiff's subjective belief, is sufficient to establish pretext.[113]  A plaintiff cannot survive summary judgment without an actual showing that the adverse employment action was the result of discrimination.[114]

Plaintiff maintains that he did not threaten Bastian but rather was regarded as a "big, black angry guy" perceived as threatening on account of his race.[115]  At his deposition, Plaintiff testified that he was treated less favorably on account of his race.[116]  For example, Plaintiff testified as follows:

> Q.     Other than being terminated because of your perception that you – that they perceived you to be the big, black, angry guy, what other instances of race discrimination have you experienced?
>
> A.     Well, simply because they had several white supervisors and manager has done more than what they could accomplish [sic]. Slammed doors, beat on desks. You can hear them yelling when they have a disagreement. They never got fired.[117]

Plaintiff further testified as follows:

> Q.     Okay. What made you think that MAXIMUS discriminated against you on the basis of your race?

---

[111] *Pratt v. City of Hous., Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

[112] *Crawford v. Formosa Plastics Corp.,* 234 F.3d 899, 903 (5th Cir. 2000).

[113] *Id.*; *see also Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).

[114] *Brown v. Home Depot U.S.A., Inc.*, No. CIV.A. 14-1470, 2015 WL 2040112, at *12 (E.D. La. Apr. 30, 2015) (Brown, J.), *aff'd sub nom. Brown v. Home Depot USA, Inc.*, 642 F. App'x 465 (5th Cir. 2016).

[115] Rec. Doc. 23-6 at 62–63.

[116] *Id.*; Rec. Doc. 30-2 at 11, 14.

[117] *Id.* at 11.

A.      Well, I was informed – well, I was terminated because, to me, they just pointed out I was the big, black, angry guy because I disagree with something in the paperwork that they gave me. I did not. Was not angry. I was not belligerent. I was not beating on anything. I did not insult anybody. And I kind of think that's a term – no pun intended – that most white folks view black – big black guys as threatening.[118]

Plaintiff also testified that he "never attacked [Bastain]," "never used violence against [Bastain]," and "never threatened [Bastain]."[119] Considering Plaintiff's deposition testimony that he never threated Bastain and was discriminated against on the basis of his race by Defendant, a reasonable trier of fact could find that Defendant discriminated against Plaintiff on the basis of race. Accordingly, the Court finds that a genuine issue of material fact is in dispute as to whether Plaintiff has established pretext.

In sum, the Court finds that genuine issues of material fact are in dispute regarding whether Plaintiff has established a prima facie case of race discrimination and whether the stated reason for Plaintiff's termination is merely a pretext for race discrimination. Accordingly, the Court denies summary judgment in favor of Defendant on Plaintiff's Title VII claim for race discrimination.

**B.      Whether Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim**

Plaintiff asserts a claim of retaliation in violation of Title VII.[120] To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, "the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the

---

[118] Rec. Doc. 23-6 at 62–63.

[119] Rec. Doc. 30-2 at 14.

[120] Rec. Doc. 1 at 1.

adverse employment action."[121]  An employee engages in activity protected by Title VII when the employee has "opposed any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[122]

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation under Title VII because he cannot establish a causal relationship between any protected activity and his termination.[123]  Defendant also argues that Plaintiff's complaint to the Ethics Hotline does not constitute protected activity.[124]  In opposition, Plaintiff contends that a causal connection exists between his call to the Ethics Line and his termination.[125]  Plaintiff notes that Penton also filed a complaint with the Ethics Line, but unlike Plaintiff, was ultimately reinstated to her position.[126]

Pursuant to Fifth Circuit precedent, "[a] causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity."[127]  At his deposition, Schmitz testified that he was made aware that Plaintiff had filed a complaint to the Ethics Line, although Schmitz maintained that Plaintiff was not terminated in response to the complaint.[128]  Plaintiff also points to evidence that his termination

---

[121] *McCoy*, 492 F.3d at 557 (citing *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

[122] 42 U.S.C. § 2000e-3(a); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

[123] Rec. Doc. 23-1 at 15.

[124] Rec. Doc. 31 at 7.

[125] Rec. Doc. 30 at 8–9.

[126] *Id.* at 9.

[127] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

[128] Rec. Doc. 30-4 at 13.

occurred one month after he filed the complaint with the Ethics Line.[129]  The Fifth Circuit has held that temporal proximity between the termination and the protected conduct is one indicia of causation in the context of employment retaliation.[130]  Accordingly, the Court finds that a genuine issue of material fact is in dispute as to whether a causal link exists between the complaint to the Ethics Line and Plaintiff's termination.

With respect to whether or not Plaintiff's complaint to the Ethics Line constitutes protected activity, the Fifth Circuit has instructed that "[a]n individual engaged in a protected activity if she: (i) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, or (ii) opposed any practice made an unlawful employment practice by Title VII."[131]  In addition, the Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."[132]

According to the record of Plaintiff's complaint to the Ethics Line, Plaintiff reported that he "has been falsely accused for conduct he did not do," and "employees have received paperwork from others in the past before, and it is not normal for employees to receive disciplinary action for the same. It is unknown why [Plaintiff] is being targeted for this."[133]  Considering Plaintiff's report that he was being "targeted" and treated in a disparate manner from other Maximus employees, a

---

[129] Rec. Doc. 30 at 9.

[130] *See Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 508 (5th Cir. 1994).

[131] *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013) (internal quotation marks omitted).

[132] *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (this case is not published and cannot be cited as precedent).

[133] *Id.* at 110.

reasonable trier of fact could conclude that Plaintiff's complaint to the Ethics Line references an unlawful employment practice under Title VII. Accordingly, the Court finds that genuine issues of material fact are in dispute as to Plaintiff's prima facie case of retaliation.

In addition, as discussed above, the Court finds that Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff has met his burden of establishing a genuine factual dispute as to whether Defendant's proffered reason for Plaintiff's termination is pretext for racial discrimination.[134] Accordingly, the Court denies summary judgment in favor of Defendant on Plaintiff's claim of retaliation under Title VII.

## V. Conclusion

For the foregoing reasons, genuine issues of material fact are in dispute with respect to Plaintiff's claims of race discrimination and retaliation under Title VII. Specifically, genuine issues of material fact are in dispute as to whether (1) Plaintiff was treated less favorably than other similarly situated employees under nearly identical circumstances; and (2) Defendant's proffered reason for Plaintiff's termination is pretext for racial discrimination. In addition, genuine issues of material fact are in dispute as to whether (1) a causal link exists between the complaint to the Ethics Line and Plaintiff's termination; and (2) Plaintiff's complaint to the Ethics Line references an unlawful employment practice under Title VII. Accordingly,

---

[134] *See supra* Section IV.A.

**IT IS HEREBY ORDERED** that "Defendant's Motion for Summary Judgment" filed by Defendant Maximus Federal Services, Inc.[135] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___14th___ day of June, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[135] Rec. Doc. 23.

23